512 A.2d 761

Comfort Pitts, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 7, 1986, before Judges ROGERS and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Margaret A. Lenzi,* for petitioner.

*Jason W. Manne,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, July 8, 1986:

This is an appeal by Comfort Pitts from an order of the Department of Public Welfare (DPW) terminating

public assistance benefits for her failure to petition a court of common pleas for the release of trust funds held in trust for one of her children.

Ms. Pitts promptly appealed an October 2, 1984 advance notice that benefits would be terminated, effective October 26, 1984, and a fair hearing was held on January 8, 1985. Benefits were continued pending outcome of the appeal.[1] The hearing officer found as a matter of fact that Ms. Pitts was an active recipient under the Aid to Families with Dependent Children Program (AFDC) and was receiving benefits for herself and her four children.[2] On June 6, 1984 Ms. Pitts reported to the County Assistance Office (CAO) that a personal injury suit was pending from an accident of July 24, 1982 wherein her minor daughter had been hit by an automobile. Also on June 6, 1984 Ms. Pitts signed forms acknowledging liability for reimbursement of assistance pending settlement of the personal injury suit. On June 27, 1984 a settlement in the amount of $3,221.67 (net after attorney's fees) was made to Ms. Pitts as trustee for her minor daughter; the CAO was notified by Ms. Pitts of the settlement on July 23, 1984.

The settlement had been accepted by the Court of Common Pleas of Philadelphia County pursuant to Pa. R.C.P. No. 2039 which governs compromises of minors. The common pleas court issued an order directing that the settlement sum be placed in an insured savings account or certificate to be marked "NOT TO BE WITHDRAWN UNTIL SAID MINOR REACHES THE AGE

---

[1] It cannot be determined from either the record or the Department's adjudication on what exact date benefits were actually terminated.

[2] Although she had previously received her assistance through Philadelphia County, in November of 1983, Ms. Pitts began receiving her assistance through Delaware County because of a change in her residence.

OF EIGHTEEN (18) OR WITHOUT ORDER OF A COURT OF COMPETENT JURISDICTION." Ms. Pitts complied with this order. At some point between July 23, 1984 and August 15, 1984 Ms. Pitts was informed by the CAO that to maintain her eligibility for assistance she must pursue an effort to convert this potential resource by petitioning the court for release of the trust fund. On August 15, 1984 the CAO issued a letter reiterating its position. This letter stated in pertinent part:

[Y]ou *must* pursue potential resources for both yourself and your child. Accordingly, it is *mandatory* that you petition the court to use [your daughter's] trust fund for her support. (Emphasis added.)

This letter further directed Ms. Pitts to provide verification by August 25, 1984 that she had initiated the proceedings.

The hearing examiner further found that because Ms. Pitts took no such action the October 2, 1984 notice of intent to discontinue assistance, effective October 26, 1984, had been issued. The hearing officer also determined that *prior to* the hearing, which was held on January 8, 1985, Ms. Pitts had *not* agreed to take action to apply for the resource but that *at the hearing,* while Ms. Pitts initially indicated that she did not want to petition for the funds, she then indicated that she would be willing to do so although she was unable to pay an attorney.

The issue as posited by the hearing officer is "[w]hether or not the [CAO] was correct and in accord with [DPW] Regulations in their (sic) decision to discontinue Public Assistance for failure to petition Court for release of a trust fund."

The then pertinent Sections of the DPW regulation read as follows:

The eligibility of any person who has a claim or legal right to any real or personal property, or any benefit or award, will be dependent upon his agreement, or the agreement of the person authorized to act for him, to apply for the resource and make it available for his use or for reimbursement.

. . . .

An individual who has a potential resource shall have 30 days either to convert the potential resource into an actual resource or to provide documentation that steps have been taken to convert the resource. In addition, the client must acknowledge liability for reimbursement of assistance granted during the 30-day conversion period in order to receive initial or continued assistance. If appropriate documentation of the steps taken toward conversion is not provided by the client, assistance will be discontinued at the end of the 30-day period. If documentation is provided assistance may be continued for the subsequent 30-day periods pending conversion of the potential resource to an actual resource.

55 Pa. Code §177.23(3) and §177.23(6).

The manner in which the issue was phrased by the hearing examiner suggests that Ms. Pitts *was required* to have actually petitioned the court of common pleas for release of the funds. We find no such requirement in the regulation. Rather, all that this regulation requires is that the individual "provide documentation that steps have been taken."[3] The testimony, accepted by the hear-

---

[3] According to DPW's post-argument brief a federal reinterpretation of DPW's policy has established that legally frozen assets automatically render one ineligible for assistance. DPW has implemented the federal reinterpretation to avoid federal quality control sanctions. DPW perceives this reinterpretation to be, in gener-

ing examiner, was that prior to the date of the hearing Ms. Pitts refused to petition the court. Ms. Pitts' attorney asserts that Ms. Pitts contacted counsel who refused to take her case. Ms. Pitts' own testimony on this point is so vague that even if it is accepted in its entirety we do not believe that as a matter of law it alone could even establish that steps had been taken. The pertinent testimony reads as follows:

> I didn't know it was going in a trust. When I went to pick up the check from the lawyer's office, when he gave me the check and a court order that the check should be deposited in a trust fund for Charmine until she is eighteen.
>
> I told him Charmine was on welfare that welfare needed money. He said, 'No. The money is not for welfare. It is for Charmine.' (N.T. 20).

From this testimony we believe it is impossible to conclude that Ms. Pitts actually took some action and at least requested the lawyer to petition the court for release of the funds. Rather, it appears that the attorney was only clarifying the nature of the trust. The only other testimony of any pre-hearing attempt to petition the court was a statement by the CAO worker handling Ms. Pitts' case. He stated that Ms. Pitts told him that she had contacted an attorney who did not want to petition the court. Even assuming that this testimony is true, it is legally insufficient to bring Ms. Pitts' efforts within the requirements of the pertinent regulation because she provided no documentation to support this effort and documentation is required under the rule. We thus believe that the hearing officer correctly determined that *prior to* the hearing, Ms. Pitts had not taken

---

al, less lenient toward recipients and is now challenging it through the federal court system. Nonetheless, it is uncontested that at the time relevant to this appeal the DPW regulation quoted, and not the federal reinterpretation, was the applicable law.

the requisite steps to secure release of the funds. *At the hearing,*[4] however, Ms. Pitts submitted into evidence an undated letter from the Delaware County Legal Assistance Association indicating that that organization could not provide an attorney to petition a common pleas court in Philadelphia County to release the funds. This letter was identified by DPW's own witness, who also stated that he had previously been unaware of the letter. Moreover, Ms. Pitts' attorney stated at the hearing that to the best of her knowledge Community Legal Services (CLS) in Philadelphia also would not accept Ms. Pitts' case. The hearing officer agreed to keep the record open for ten days so that counsel could establish whether this was in fact the case. Within the ten days Ms. Pitts' attorney submitted a letter from CLS of Philadelphia which was made part of the original record and reads as follows:

> You have asked me whether Community Legal Services would represent Comfort Pitts in an attempt to invade a trust established on behalf of her minor daughter, Charmin. As you outlined to me, the Pitts live in Delaware County although the trust has been established in Philadelphia County. You further explained that the trust is a result of a personal injury suit.
>
> As Project Head of the Health, and Human Services Unit at Community Legal Services it is my opinion that CLS would not represent Ms.

---

[4] DPW mentions in its brief that Ms. Pitts would remain ineligible for benefits until she took steps to convert the trust, and states, "even if [Ms. Pitts] agreed to make the asset available at the Hearing, her eligibility could commence no earlier than that date." DPW brief p. 6, n.2. Accordingly, we will examine evidence introduced both at the hearing and subsequent to the hearing while the record remained open to see if Ms. Pitts eventually complied with the regulation.

Pitts in such an action, I know of no similar case in which CLS has ever provided representation given the facts that you have outlined. It is also my belief that there are no lawyers within the city of Philadelphia who would be willing to take such a case without reimbursement.

The hearing examiner mentioned both the Delaware County Legal Assistance Association letter and the CLS letter in her adjudication and did not question their credibility. She stated, however, "[i]t is [Ms. Pitts'] contention that because she cannot obtain free attorny (sic) services, she is unable to take action to petition the Courts for these funds. . . . Regulations do not indicate that because of the possibility of no free representation, the client need not take action to apply for the resource." Thus, the hearing examiner, on the basis of DPW regulations, concluded that inability to pay an attorney to petition the court or to find one willing to take the case *pro bono* meant that Ms. Pitts had failed to take the action required by the regulation. We believe that this position constitutes a misreading of the regulation and hence, a legal error subject to review by this Court. *See* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. As noted earlier, the regulation does not require that the petition actually be filed, but only that steps be taken to convert the resource. We read the regulation as requiring only that *reasonable* steps need be taken and it is our view, based upon the two letters found credible by the hearing examiner, that such steps *were* taken by Ms. Pitts in her attempts to find counsel to represent her. Moreover, it is clear that as of January 17, 1985, the date the CLS letter was received by DPW, it was on notice and in receipt of documentation that steps had been taken. In short, we believe that under a reasonable reading of the regulation Ms. Pitts' failure to find willing counsel cannot be

assessed against her where her efforts have been diligent and sincere. We thus hold that as of the date DPW received the letter from CLS, Ms. Pitts had done what a reasonable reading of the regulation required and hence as of that date her benefits should have been reinstated. Accordingly, the DPW order must be changed to reflect this.

Ms. Pitts also argues that requiring her to petition the court to release the funds violates her duty as a trustee. In *Castleberry v. Department of Public Welfare*, 36 Pa. Commonwealth Ct. 480, 387 A.2d 1360 (1978), this Court held that a parent who had purchased real property for her children and placed it in trust with herself as trustee could not use the trust relationship as a basis for not signing DPW acknowledgement of reimbursement forms. We noted that the fundamental rule applicable to public assistance is that "need and dependency are the sole criteria for eligibility." *Id*. at 484, 387 A.2d at 1362. We recognized in *Castleberry* that creation of a trust in the children with parents as trustees could operate to frustrate this rule if the trust were permitted to become a device hampering DPW's right of reimbursement. We further rejected the notion that DPW as creditor is required to bring suit itself against the recipients, noting that the pertinent statutory language does not set forth a requirement that it do so.

In the instant case, admittedly the trust was created not by a parent, but by a settlement involving an "outsider." Further, unlike *Castleberry*, the trust res is restricted for the use of one family member. But these distinctions do not abrogate the rule that public assistance is dependent upon need. We take judicial notice that Ms. Pitts ultimately did petition the court and that said petition was denied at No. 4159 September 1983 Term by Judge DiBona of the Court of Common Pleas of Philadelphia County.

In the present posture of this case, however, we need not consider these later events. Our determination is limited to the question of whether Ms. Pitts complied with applicable DPW regulations and if so at what time. Having found as a matter of law that compliance occurred on January 17, 1985, we direct DPW to reinstate benefits as of that date, and remand the case so that those benefits due Ms. Pitts can be computed.[5]

ORDER

Now, July 8, 1986, the order of the Department of Public Welfare in the above captioned matter is hereby reversed insofar as it denied benefits from January 17, 1985 and the case is remanded for entry of an order reinstating benefits as of January 17, 1985. The order is affirmed insofar as it denied benefits prior to January 17, 1985.

Jurisdiction relinquished.

_____

[5] As noted in footnote 1, it is uncertain when benefits were actually terminated. Assuming they were terminated as of the date of the hearing, January 8, 1985, the deprivation of benefits would be a matter of weeks only. It is assumed that DPW reinstated benefits after the Common Pleas Court of Philadelphia denied the petition to invade the trust funds.